Cress BERNARD, Jet America Pilots, et al., Plaintiffs/Appellees,

v.

AIR LINE PILOTS ASSOCIATION, INTERNATIONAL, AFL–CIO, Defendant/Appellant,

and

Alaska Airlines, Inc., Defendant.

No. 88–2600.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 17, 1988.

Memorandum January 24, 1989.

Order and Opinion April 26, 1989.

and employing approximately 102 nonunion pilots. In September 1986, Jet America was acquired by the Alaska Air Group, Inc., the corporate parent of Alaska Airlines, a carrier employing approximately 500 ALPA pilots.

Alaska Air Group operated Jet America and Alaska separately for a few months, and then announced that it would merge the carriers. Pursuant to the collective bargaining agreement governing the Alaska pilots, ALPA entered into negotiations with Alaska to determine how to integrate the Jet America pilots with the Alaska pilots for purposes of seniority and possible reductions in force.

At the time of the negotiations, ALPA followed two policies governing mergers: one for mergers in which ALPA was the recognized bargaining agent for both pilot groups involved, and one for mergers in which ALPA represented only one of the pilot groups involved. Under the former, ALPA merger representatives of each pilot group were required first to negotiate with each other in an effort to reach an integration agreement, and failing such an agreement, to enter into mediation, and if necessary, submit to final and binding arbitration. ALPA was then required to use "all means at its disposal to compel a company to recognize" the resulting seniority list. Under the latter policy, the ALPA president was required to make every effort to modify the general merger policy and gain acceptance of a procedure that would result in "a fair and equitable resolution in a timely and expeditious manner." Between May 1987 and October 1, 1987, the effective date of the merger, ALPA merger representatives met with management to discuss various proposals for integration. They also met informally with Bernard who appeared to be influential among the Jet America group. However, no Jet America representatives participated in any of the meetings between ALPA and management. ALPA representatives asked that Jet America pilots be permitted to participate. Management rejected the request.

When it appeared that management intended to proceed with the merger on Octo-

Eugene B. Granof Air Line Pilots Ass'n, Intern., Washington, D.C., for defendant/appellant.

Thomas M. Singman, Oakland, Cal., for plaintiffs/appellees.

Geraldine Carolan, Seattle, Wash., for defendant Alaska Airlines.

Before GOODWIN, Chief Judge, SNEED and HUG, Circuit Judges.

GOODWIN, Chief Judge:

Air Line Pilots Association ("ALPA") appeals a partial summary judgment and injunction in favor of a class of pilots represented by Cress Bernard. Prior to the merger of Jet America Airlines ("Jet America") with Alaska Airlines ("Alaska"), the Alaska pilots were represented by ALPA for purposes of collective bargaining, while the Jet America pilots were unrepresented. Captain Bernard, a Jet America pilot, filed a complaint on behalf of himself and the other Jet America pilots against ALPA for breach of its duty of fair representation in negotiating an integrated seniority agreement with Alaska.

Jet America was an independent air carrier based in Long Beach, California,

ber 1 despite the absence of an agreement regarding seniority and other merger issues, ALPA filed an action in the U.S. district court seeking to block the merger. After the court declined to issue a TRO, that lawsuit was voluntarily dismissed.

The agreement declared invalid here was reached on October 6, 1987. Significantly, between October 1, when the merger became effective, and October 6, no Jet America pilot participated in ALPA negotiations with Alaska, despite requests to participate. ALPA does not dispute that it did not follow its merger policy governing mergers of ALPA–represented groups in negotiating the October 6 agreement.

Bernard sued on behalf of himself and the other Jet America pilots alleging that ALPA had breached its duty of fair representation by: (1) excluding them from all negotiations for an agreement integrating the seniority lists of the two pilot groups; (2) entering into an agreement that discriminated against them in favor of the pre-merger Alaska pilots; and (3) failing to afford them the benefits of ALPA's own merger policy. Bernard then moved for summary judgment or, in the alternative, preliminary injunctive relief setting aside the October 6 agreement pending a trial.

The court granted partial summary judgment, holding that the October 1 merger triggered ALPA's duty of fair representation to the former Jet America pilots and that this duty was breached because the Jet America pilots were excluded from the bargaining process and ALPA failed to follow the dispute resolution procedures of its own merger policy.

By way of remedy, the district court: (1) directed ALPA to apply its current merger policy providing for negotiation, mediation and arbitration in order to resolve merger and seniority integration disputes between the two groups of pilots; (2) directed ALPA to treat the former Jet America pilots as a separate ALPA–represented group for purposes of implementing this policy and to appoint three Jet America pilot merger representatives; (3) vacated and set aside the October 6, 1987, seniority integration agreement between ALPA and

Alaska Airlines; and (4) specified the basis by which pilots would be furloughed, promoted and given flying assignments in the interim period until a new agreement could be reached.

The district court specifically declined to rule on the fairness of the October 6 agreement, concluding that fairness should be determined in light of whatever agreement ultimately was reached pursuant to ALPA's merger policy. The court therefore retained jurisdiction to assess damages upon completion of the new agreement.

*I. Jurisdiction*

■ This court has jurisdiction over interlocutory orders granting injunctions under 28 U.S.C. § 1292(a)(1). In addition, an appeal under 28 U.S.C. § 1292(a)(1) brings before the court the entire order, and, in the interests of judicial economy the court may decide the merits of the case. *Barrett v. Smith,* 530 F.2d 829, 830 (9th Cir.1975), *cert. denied,* 425 U.S. 977, 96 S.Ct. 2179, 48 L.Ed.2d 801 (1976). The court, however, generally will chose to decide only those matters "inextricably bound up with" the injunctive relief. *Marathon Oil Co. v. United States,* 807 F.2d 759, 763–65 (9th Cir.1986), *cert. denied,* 480 U.S. 940, 107 S.Ct. 1593, 94 L.Ed.2d 782 (1987).

■ It is not disputed that the district court's order specifying interim relief is an appealable injunction. But the court's finding on the duty of fair representation issue underlies the decision permanently to vacate and set aside the October 6 agreement, and, in turn, the latter decision necessitated some form of interim relief. Thus review of the propriety of the order specifying the form of interim relief is inextricably tied with the underlying decision, and this court has jurisdiction to review the entire order. *Cf. Fentron Inds. v. National Shopmen Pension Fund,* 674 F.2d 1300, 1303–04 (9th Cir.1982) (since substantive ERISA issues underlay district court decision to grant permanent injunction, review of injunction necessarily involves deciding ERISA claims, and

§ 1292(a)(1) jurisdiction extends to partial summary judgment on those claims).

Further, the interests of judicial economy are well served where, as here, the record is well developed and the district court has completed its consideration of the disputed issues. *See Marathon Oil, supra,* at 764; *Sierra On–Line Inc. v. Phoenix Software, Inc.,* 739 F.2d 1415, 1421 (9th Cir.1984).

## II. Merits

ALPA violated its duty of fair representation if (1) it represented the Jet America pilots and thus owed those pilots a duty of fair representation, and (2) it breached that duty.

The district court found no genuine issue of material fact concerning whether ALPA represented the Jet America pilots on and after October 1, 1987, and ALPA does not dispute this finding. At the TRO hearing on September 30, 1987, to block the impending merger, ALPA representatives acknowledged that ALPA would represent the Jet America pilots after the merger. In any event, the collective bargaining agreement states that ALPA is the certified representative for all pilots employed by Alaska Air, and after the merger, the Jet America pilots squarely fit this description.

The question, therefore, is whether ALPA breached its duty of fair representation. In general, a union owes a duty of fair representation to all members of the bargaining unit in negotiating an integrated seniority list. *See Humphrey v. Moore,* 375 U.S. 335, 84 S.Ct. 363, 11 L.Ed.2d 370 (1964). Because the interests of a few individuals often must give way to the interests of the group, courts have given unions wide latitude. If a union's actions are not arbitrary, capricious, or taken in bad faith, they will not be found to violate the duty of fair representation. *See Vaca v. Sipes,* 386 U.S. 171, 190, 87 S.Ct. 903, 916, 17 L.Ed.2d 842 (1967); *Ford Motor Co. v. Huffman,* 345 U.S. 330, 73 S.Ct. 681, 97 L.Ed. 1048 (1953). A union may negotiate for and agree to contract provisions involving disparate treatment of distinct classes of workers as long as such conduct is not arbitrary or taken in bad faith. *Williams v. Pacific Maritime Ass'n,* 617 F.2d 1321, 1330 (9th Cir.1980) (approving disparate treatment of provisional workers and fully registered longshoremen), *cert. denied,* 449 U.S. 1101, 101 S.Ct. 896, 66 L.Ed.2d 827 (1981); *see also In re Pan American–Acquisition of Control of, and Merger with National,* CAB Order 82–3–16, Docket 39851 (March 4, 1982) at 4–5 (National employees not entitled to separate representation in negotiations over integrated seniority list because "labor organizations as a matter of course must compromise divergent interests among their members").

Wide latitude, however, does not mean a union may discriminate on the basis of union membership. *Castelli v. Douglas Aircraft Co.,* 752 F.2d 1480, 1483 (9th Cir. 1985); *see also Teamsters Local Union No. 42 v. NLRB,* 825 F.2d 608, 612 (1st Cir.1987) (seniority integration system based on date of membership to the union held discriminatory and constituted a duty of fair representation violation).

Two uncontested facts support the district court's finding that ALPA breached its duty of fair representation. First, no Jet America pilot was permitted to participate in ALPA negotiations with Alaska after the merger, despite requests to do so. Second, ALPA failed to follow its own merger policy for mergers with ALPA–represented groups. This policy would have required ALPA to conduct internal negotiations with Jet America pilots, and mediate and arbitrate if necessary, before presenting its position to management.

ALPA argues that its actions were neither arbitrary nor capricious, and therefore within the range of conduct allowed by the courts. According to the union, it reasonably concluded that speaking to management as one voice would best serve the interests of the members of the union as a whole, and so chose not to appoint a Jet America pilot to the negotiating team. Moreover, it claims, its negotiating strategy did not discriminate merely on the basis of union membership, but was dictated by the equities of the situation. In particular, Alaska had been expanding prior to the

merger and ALPA could expect to add to the number of its pilots. Jet America, on the other hand, had been contracting. The prospects for its pilots were not optimistic. Finally, ALPA argues it was not obliged to follow its merger policy once the Jet America pilots were merged with the Alaska pilots. Once merged, the two pilot groups became a single bargaining unit, and ALPA's duty to the Jet America pilots was no broader than that dictated by the law of fair representation.

However, ALPA's general statement begs the question. ALPA's adoption of a merger policy for situations involving mergers with ALPA–represented groups shows that ALPA itself realizes such cases pose a difficult task of balancing not just divergent, but polarized, interests. Had the Jet America pilots been represented by ALPA prior to the merger and been accorded the benefit of the merger policy, and had no agreement been finalized by the merger date, it is hard to believe that ALPA would have abandoned its merger policy and simply treated the two groups of pilots as a unified bargaining unit. The effect of ALPA's approach is to discriminate against the Jet America pilots because they were not unionized prior to the merger.

Moreover, undisputed evidence suggests that ALPA failed even to recognize that it represented the Jet America pilots as of October 1. For example, it signed the October 6 agreement on behalf of the premerger Alaska pilots only. A letter from ALPA's president to Bernard as late as October 20 described the Jet America pilots as nonunion and claimed that ALPA had applied its merger policy regarding nonunion shops to reach the October 6 agreement. Thus its claims that it accorded the Jet America pilots fair representation during the post–October 1 negotiations are hollow.

### III.  The Injunction

■ Having correctly determined that ALPA violated its duty of fair representation, and that a new agreement would have to be executed, the district court faced the question what to do in the interim. Rather than allow the tainted October 6 agreement to govern, the court ordered the agreement set aside, and a temporary system for promotions and furloughs established.

■ A district court's grant or denial of preliminary injunctive relief will be reversed only where the district court abused its discretion or rested its conclusion on clearly erroneous factual findings or erroneous legal conclusions. *Sierra Club v. United States Forest Serv.*, 843 F.2d 1190, 1192 (9th Cir.1988).

■ In considering whether to award a preliminary injunction, a trial court considers the likelihood that the moving party will prevail on the merits and the possible harm to the parties from granting or denying the injunction. Where a party can show a strong chance of success on the merits, he need show only a possibility of irreparable harm. Where, on the other hand, a party can show only that serious questions are raised, he must show that the balance of hardships tips sharply in his favor. *Sierra On–Line, supra*, at 1421.

By winning on the duty of fair representation issue, Bernard has shown a 100% chance of success on the merits. Hence he need show only a possibility of irreparable harm and that the balance of hardships is tipped even slightly in his favor.

In this case, just as the Jet America pilots may suffer irreparable harm as a result of leaving the October 6 agreement in place if that agreement proves to be less favorable to them than the agreement ultimately reached, the Alaska pilots may suffer irreparable harm as the result of imposing interim relief if that relief proves to be less favorable to the Alaska pilots than the agreement ultimately reached. Thus the issue turns on the balance of hardships. Given the finding that ALPA failed fairly to represent the Jet America pilots, we cannot say the district court erred when it concluded that leaving the tainted October 6 agreement in place until a new one could be executed would pose a greater risk of hardship to the Jet America pilots than to the Alaska pilots. The district court specif-

ically declined to rule on the substantive fairness of the October 6 agreement. Thus we cannot now say how similar the terms of the ultimate agreement will be to the October 6 agreement; we know only that the latter is tainted by a duty of fair representation violation. This fact tips the balance in favor of the Jet America pilots.

## CONCLUSION

On October 1, 1987, the date Alaska and Jet America merged, ALPA's duty to fairly represent the Jet America pilots attached. ALPA breached that duty by discriminating against the previously nonunionized Jet America pilots in reaching an integrated seniority agreement with Alaska. The district court acted within its discretion in issuing an order to set the tainted agreement aside, compel the parties to reach a new one according to ALPA's own internal procedures, and submit to a stipulated system for promotions and furloughs in the meantime.

AFFIRMED.