**PAISA, INC., a Nevada corporation,**
**Plaintiff,**

v.

**N & G AUTO, INC. a California**
**corporation, Defendant.**

**No. CV–96–2909–KMW (JGx).**

United States District Court,
C.D. California.

May 13, 1996.

Paisa, Inc., Stuart P. Jasper, Jasper & Jasper, Irvine, CA, for plaintiff.

N & G Auto, Inc., Michael G. Portner, Portner Law Offices, Los Angeles, CA, for defendant.

## ORDER GRANTING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

WARDLAW, District Judge.

The Court has considered Plaintiff's Motion for Preliminary Injunction, which was filed on April 23, 1996, and has read and reviewed all the material filed by the plaintiff in connection with the Motion. Based upon all briefs, exhibits, declarations, and other evidence submitted by the parties, the oral argument of counsel, as well as all files and records in this case, the Court hereby **GRANTS** Plaintiff's Motion for Preliminary Injunction.

## I. PROCEDURAL BACKGROUND

This is an action by Paisa, Inc. ("Paisa"), a franchisor of an automotive service system, against N & G Auto, Inc. ("Defendant"), its recently terminated franchisee. Complaint ¶ 1.

Paisa owns and operates a system of franchised automotive service shops known as the Purrfect Auto Service System. Complaint ¶ 6. In or about January 1990, Paisa's assignor registered "Purrfect Auto Service" on the Principal Register of the U.S. Patent and Trademark Office as a service mark ("the mark"). Complaint ¶ 8. The mark is "Purrfect Auto Service" in the shape of a cat, replete with cat's feet and a cat's tail. Complaint ¶ 8, Exh. A. Paisa has used the mark as the emblem of its chain of franchised automotive service shops and the goods sold and services provided thereon. Complaint ¶ 9. Paisa is the mark's exclusive registered owner. Complaint ¶ 14. Since December 1992, Paisa has engaged in the franchising of Purrfect Auto Service shops, and currently has more than 70 auto service shops in California and Nevada. Complaint ¶¶ 15, 16.

On July 24, 1994, Paisa entered into a written Franchise Agreement ("the Agreement") with Defendant. Complaint ¶ 17. The Agreement provides Defendant with a limited license to use the mark, in relevant part, as follows:

Franchisee hereby acknowledges that its use of such Mark is a temporary use under this Agreement and that PAISA, INC. retains all ownership interest in the Mark and all goodwill generated by the Mark. Franchisee agrees to use the Mark only in accordance with this franchise and acknowledges that the use of the Mark outside the scope of this franchise, without PAISA, INC.'s prior written consent, is an infringement of PAISA, INC.'s exclusive

right, title and interest in and to the Mark, and expressly covenants that ... after the ... termination hereof, Franchisee shall not, directly or indirectly, make any unauthorized use of ... the Mark ... Complaint ¶ 19, Exh. B, ¶ 2.0.

The Agreement requires that Defendant make certain payments, including an initial fee, royalties, advertising fees, and other fees. Complaint ¶ 25, Exh. B, ¶¶ 5.0 et seq. Upon Defendant's failure to pay any sums due under the Agreement, Paisa may terminate the Agreement upon not less than five days prior written notice. Complaint ¶ 29, Exh B, ¶ 12.1. In the event of termination, Defendant is required to "forthwith discontinue" use of the mark and "shall not thereafter operate or do business under any name or in any manner that might tend to give the general public the impression" that it is operating as a franchisee of Paisa. Complaint ¶ 31, Exh. B, ¶ 13.0. Upon termination, Defendant is further required to cease using any of Paisa's trade secrets, procedures, techniques, or materials acquired by virtue of the relationship established by the Agreement. Id.[1]

In the fall of 1995, Paisa claims that Defendant failed to make timely payments of royalties and advertising fees. Complaint ¶ 26. On February 26, 1996, Paisa notified Defendant in writing of default and, as of March 22, 1996, Defendant remained in default for royalties and advertising fees of $29,769.81. Complaint ¶ 27. As a result, on March 22, 1996, Paisa issued to Defendant a written Notice of Default, and on April 1, 1996, Paisa sent Defendant written Notice of Termination of Franchise and Sublease, in accordance with the Agreement. Complaint ¶¶ 28, 30, Exh. C. The Notice of Termination demands, inter alia, that Defendant immediate-

ly discontinue use of Paisa's trademarks and cease doing business "under any name or in any manner that might tend to give the general public the impression that you are operating a business as a franchisee of Paisa, Inc." Complaint ¶ 32, Exh. C. Defendant has allegedly refused to comply with Paisa's demand. Complaint ¶ 33.

On April 18, 1996, Paisa's counsel visited the location of the terminated franchisee. Jasper Decl. ¶¶ 2, 3. Four signs allegedly advertised "Purrfect Auto Service," work orders and business cards all bore the subject mark, and Defendant's business was being operated as if it still were a Purrfect Auto Service franchise. Id. at ¶¶ 4–8, Exh. A.

On April 23, 1996, Paisa filed a Complaint in this Court alleging claims against Defendant for injunctive relief for violation of the Lanham Act, 15 U.S.C. § 1125(a), and for specific performance of the Agreement's provisions to de-identify. On the same date, Paisa filed an ex parte application for a temporary restraining order ("TRO"), and a separate motion for preliminary injunction.[2] Defendant did not oppose Paisa's ex parte application for a TRO.

On May 2, 1996, the Court granted Paisa's ex parte application for a temporary restraining order. The Court required Paisa to post a $10,000.00 bond and ordered Defendant to show cause re preliminary injunction. Defendant has not responded to the Court's order to show cause. Paisa's motion for preliminary injunction is now before the Court.

## II. ANALYSIS

### A. Legal Standard For Issuance Of Preliminary Injunctive Relief.

The United States Supreme Court has repeatedly held that "the basis for injunctive

---

1. The Agreement requires that the parties submit any controversy or claim arising out of the Agreement to arbitration with certain limited exceptions. Pursuant to Section 14.0 of the Agreement, "[T]his [arbitration] clause shall not be construed to limit any rights or remedies of Franchisor for bringing any action in any court o[f] competent jurisdiction for injunctive or other provisional or equitable relief, without the necessity of posting bonds ... as Franchisor deems to be necessary or appropriate to compel Franchisee to comply with his obligations hereunder or

to protect the Trademarks of Franchisor." Complaint, Exh. B, ¶ 14.0.

2. Paisa's filing of an ex parte application for TRO and a separate motion for preliminary injunction was improper. Under Local Rule 7.17, "When a TRO is sought, application for a preliminary injunction shall be made by order to show cause. If the TRO is granted, the hearing on the order to show cause will be set within ten (10) days after entry of the TRO unless otherwise agreed by the parties."

relief in the federal courts has always been irreparable injury and the inadequacy of legal remedies." *Weinberger v. Romero–Barcelo,* 456 U.S. 305, 312, 102 S.Ct. 1798, 1803, 72 L.Ed.2d 91 (1982).

■ The Ninth Circuit has formulated two tests for evaluating requests for preliminary injunctive relief. Under the traditional test, "a court may issue a preliminary injunction if it finds that (1) the [moving party] will suffer irreparable injury if injunctive relief is not granted; (2) the [moving party] will probably prevail on the merits; (3) in balancing the equities the [non-moving party] will not be harmed more than the [moving party] is helped by the injunction; and (4) granting the injunction is in the public interest." *Stanley v. University of Southern California,* 13 F.3d 1313, 1319 (9th Cir.1994).

■ Under the alternative test, "a court may issue a preliminary injunction if the moving party demonstrates *either* a combination of probable success on the merits and the possibility of irreparable injury *or* that serious questions are raised and the balance of hardships tips sharply in [its] favor. Under this last part of the alternative test, even if the balance of hardships tips decidedly in favor of the moving party, it must be shown as an irreducible minimum that there is a fair chance of success on the merits." *Id.; Martin v. International Olympic Committee,* 740 F.2d 670, 674–75 (9th Cir.1984).

## B. Paisa's Motion For Preliminary Injunction Must Be Granted.

In its moving papers, Paisa claims that a preliminary injunction is necessary in order to prevent further erosion of the franchise system's goodwill, to prevent public confusion as to the source of origin of the trademarked goods and services being furnished at the

subject location, and to prevent harm to authorized franchisees who are continuing to meet the system's high standards. Stitz Decl. ¶ 19. For the reasons discussed below, Paisa has adequately established its entitlement to the requested injunctive relief and Paisa's motion for a preliminary injunction therefore must be granted.

### 1. Paisa Has Established A Significant Risk Of Irreparable Harm.

The purpose of the Lanham Act is to "regulate commerce within the control of Congress by making actionable the deceptive and misleading use of marks in such commerce; ... to protect persons engaged in such commerce against unfair competition; to prevent fraud and deception in such commerce ..." 15 U.S.C. § 1127; *Ocean Garden, Inc. v. Marktrade Co., Inc.,* 953 F.2d 500, 503 (9th Cir.1991).[3] The Act specifically provides for injunctive relief to prevent violations of Section 1125(a). 15 U.S.C. § 1116(a).

The Ninth Circuit has stated that in trademark infringement actions, "once the plaintiff establishes a likelihood of confusion, it is ordinarily presumed that the plaintiff will suffer irreparable harm." *Vision Sports, Inc. v. Melville Corp.,* 888 F.2d 609, 612 n. 3 (9th Cir.1989); *see also Century 21 Real Estate Corp. v. Sandlin,* 846 F.2d 1175, 1180 (9th Cir.1988) (injunctive relief is the remedy of choice for trademark or unfair competition cases, since there is no adequate remedy at law for the injury caused by a defendant's continuing infringement).

■ In the instant case, the evidence indicates that Defendant continues to engage in the unauthorized use of Paisa's registered mark. Defendant's continuing unauthorized use creates a likelihood of confusion for the public,[4] and invariably threatens injury to the

---

3. Specifically, Section 1125(a) prohibits uses in commerce of "any word, term, name, symbol, or device" which is "likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person ..." 15 U.S.C. § 1125(a)(1)(A).

4. The test for determining likelihood of confusion requires consideration of the following six factors: 1) the strength or weakness of the marks; 2) similarity in appearance, sound, and meaning; 3) the class of goods in question; 4) the marketing channels; 5) evidence of actual confusion; and 6) evidence of the intention of defendant in selecting and using the alleged infringing name. *Century 21 Real Estate Corp.,* 846 F.2d at 1178. In this case, the marks are not merely similar, but identical. Defendant continues to use Paisa's

economic value of the goodwill and reputation associated with Paisa's mark. *See Church of Scientology Int'l v. Elmira Mission of Church of Scientology*, 794 F.2d 38, 44 (2d Cir.1986). Paisa has no adequate remedy at law for the injury caused by Defendant's continuing infringement. Thus, Paisa has established a significant risk of irreparable harm.

### 2. Paisa Has Adequately Demonstrated Likely Success on the Merits.

■ To obtain a preliminary injunction, the plaintiff must show that it is likely to prevail on the merits. *Wilson v. Watt* (9th Cir.1983) 703 F.2d 395. Likelihood of success must be examined in the context of plaintiff's showing regarding irreparable harm and the parties' relative hardships. *See Bernard v. Air Line Pilots Assoc., Intern., AFL–CIO* (9th Cir.1989) 873 F.2d 213, 217.

■ In this case, the undisputed evidence shows that Defendant continues to use the identical registered trademarks that it had previously licensed. Because Paisa has made an unrebutted case that it owns the Purrfect Auto Service mark and that Defendant is engaging in the unauthorized use of the mark, Paisa is likely to prevail on its claims for trademark infringement and de-identification under the Agreement. *See Church of Scientology Int'l*, 794 F.2d at 44–45; *see also Professional Golfers Assn. v. Bankers Life & Casualty Co.*, 514 F.2d 665, 670 (5th Cir. 1975) (once a licensing arrangement has ceased, a former licensee's right to the mark ends and any subsequent use constitutes infringement). The Court concludes that Paisa has adequately demonstrated likely success on the merits of its claims.

### 3. The Public Interest Favors The Issuance of a Preliminary Injunction.

■ Finally, the strong public interest in preventing consumer confusion and fraud favors issuance of the requested injunctive relief. A franchisee who once possessed authorization to use the trademarks of its

mark without authorization and to provide goods and services as if it were still a licensed franchisee. Under the circumstances, a likelihood that

franchisor becomes associated in the public's mind with the trademark holder. *Church of Scientology Int'l*, 794 F.2d at 44. When such party loses its authorization yet continues to use the mark, the unauthorized use confuses and defrauds the public. *Id.* In cases involving terminated franchisees, the potential for consumer confusion is even greater than in cases of random infringement. *Id.* Moreover, the continuing unauthorized use threatens harm to authorized franchisees who are fulfilling their contractual obligations and continuing to meet the Purrfect Auto System's standards.

## III. CONCLUSION

For reasons discussed above, the Court finds that Paisa has satisfied the general equitable requirements under the applicable Ninth Circuit tests for preliminary injunctive relief. Accordingly, the Court hereby **GRANTS** Paisa's motion for preliminary injunction. Pursuant to Fed.R.Civ.P. 65(c), Paisa has already posted a $10,000.00 bond and nothing further is required.

During oral argument, the parties discussed the appropriate parameters of the preliminary injunctive relief to be granted and agreed to the adoption of paragraph 5 of Paisa's proposed preliminary injunction, with the exception of subparagraph f. Based on the foregoing, the Court adopts paragraph 5 of Paisa's proposed preliminary injunction, excluding subparagraph f, and orders as follows:

Defendant, its affiliated or related corporations or entities, their officers, directors, agents, servants, and employees, and all those persons in active concert or participation with them are hereby enjoined pending final judgment herein from using the mark and trade name "Purrfect Auto Service," or any mark or trade name similar thereto or likely to cause confusion, mistake, or deception therewith, in the sale distribution, or advertising of automotive service or similar merchandise or services at or concerning the premises at 10721 Lindley Ave-

the public will confuse Defendant with a licensed Purrfect Auto Service shop clearly exists.

nue, Granada Hills, California ("the subject business") or at any other locality in the United States, and are enjoined specifically from the following acts:

a.   Operating or doing business under the name of "Purrfect Auto Service;"

b.   Operating or doing business under any name or in any manner that might tend to give the general public the impression that defendant's terminated franchise agreement with Paisa is still in force, that defendant or any business of defendant is in any way connected or affiliated with Paisa, or that defendant is or was authorized to use the Purrfect Auto Service mark or name in any respect;

c.   Using any marks, name, symbol, sign or indicia, including but not limited to the Paisa mark "Purrfect Auto Service," or making any statement which suggests or tends to suggest that defendant or nay business of defendant is or was in any way connected with or part of the Purrfect Automotive Service;

d.   Using or adopting any Paisa confidential and/or proprietary business information;

e.   Using or adopting any Repair Orders, invoices, guarantees, inspection reports, or other paper or other objects on which any Purrfect Auto Service name or service mark is imprinted;

f.   Using or adopting the Franchisee Business Guide or any other manuals, instructions or materials received by defendant under the auspices of the terminated Franchise Agreement;

g.   Making any statements or representations concerning the origin or sponsorship of defendant's goods or services or concerning defendant's relationship with Paisa which is in any way untrue or misleading;

h.   Failing to authorize the applicable telephone company(ies) to transfer to Paisa or its designee all telephone numbers and listings (in the white pages, the yellow pages, and all other directories) of the subject business.

IT IS SO ORDERED.