**HOLLYWOOD ATHLETIC CLUB LICENSING CORP.,**
Plaintiff,

v.

**GHAC–CITYWALK, a California Limited Partnership, Andrew Galef and Does 1–10, Defendants.**

**No. 96–3949 DDP (Ex).**

United States District Court,
C.D. California.

Sept. 9, 1996.

Deborah F. Sirias, Fred A. Fenster, Scott Bryan Zolke, Heenan Blaikie Law Offices, Beverly Hills, CA, for Hollywood Athletic Club Licensing Corp.

Cameron H. Faber, William Walter Reid, Parker Milliken Clark O'Hara & Samuelian, Los Angeles, CA, for GHAC Citywalk, Andrew Galef.

## ORDER GRANTING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

PREGERSON, District Judge.

Plaintiff's Motion for Preliminary Injunction came before the Court on September 9, 1996. After reviewing and considering the materials submitted by the parties and hearing oral argument, the Court grants Plaintiff's Motion for Preliminary Injunction.

## I. BACKGROUND

Plaintiff Hollywood Athletic Club Licensing Corporation ("Hollywood") owns several federally registered trademarks (collectively, the "Marks") that primarily relate to the right to use the name "Hollywood Athletic Club." Hollywood is in the business of licensing the right to use the Marks. Hollywood also uses the Marks in connection with its own business, a restaurant in Hollywood, California, known as the "Hollywood Athletic Club."

Defendant GHAC–CityWalk ("GHAC") is a California limited partnership that licensed the right to use the Marks under an agreement ("Agreement") with Hollywood. Defendant Andrew Galef is the president of GKH Corporation, the general partner of GHAC.

The Agreement, executed on May 23, 1993, granted GHAC a license to use the Marks in connection with the operation of a billiard parlor, restaurant, and drinking establishment located at MCA/Universal Studios CityWalk in Universal City, California. The Agreement also granted GHAC the right to use the Marks in connection with the sale of merchandise, including clothing, mugs, and sporting goods ("Licensed Products").

The Agreement required GHAC to pay an initial fee of $100,000 and monthly royalties based on a percentage of GHAC's gross sales. The Agreement gave Hollywood the right to terminate the Agreement if GHAC failed to pay the initial fee and royalties in a timely manner. However, to exercise this right, the Agreement obligated Hollywood to give GHAC written notice of any default and

fifteen days to cure the default. The Agreement provided that upon termination, GHAC was prohibited from any use of the Marks. The Agreement, however, gave GHAC "a reasonable time, not to exceed six months," in which to dispose of any Licensed Products. The Agreement was fully integrated and it also provided that no waiver, modification, or amendment to the Agreement would be effective unless in writing and signed by both parties. The Agreement also stated that time was of the essence for all obligations and rights under the Agreement.

GHAC payed only $50,000 of the $100,000 and failed to pay royalties in a timely manner. Accordingly, on March 14, 1996, Hollywood notified GHAC in writing that GHAC had defaulted on its obligations. The notice also stated that if GHAC failed to cure within fifteen days, the Agreement would terminate on March 30, 1996.

GHAC failed to cure the defaults, but continued to use the Marks. GHAC contends, however, that after March 30, 1996, Hollywood agreed not to terminate the Agreement until MCA, GHAC's landlord, approved GHAC's request to change the name of its restaurant from "Hollywood Athletic Club" to another name.

Hollywood denies any such modification and contends that the Agreement has been terminated.

On June 4, 1996, Hollywood filed a complaint against GHAC with claims for: (1) breach of contract; (2) trademark infringement; (3) false designation of origin; (4) accounting; (5) unfair competition; and (6) trademark dilution.

Hollywood now seeks a preliminary injunction based on the second and third claims.

## II. DISCUSSION

### A. *Legal Standards for Issuance of a Preliminary Injunction.*

Federal Rule of Civil Procedure 65(b) and the Lanham Act, 15 U.S.C. § 1116(a), provide that a court has the "power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office or to prevent a violation under section 1125(a) of this title." 15 U.S.C. § 1116(a).

A party seeking a preliminary injunction must show "either '(1) a combination of probable success on the merits and the possibility of irreparable injury if relief is not granted or (2) the existence of serious questions going to the merits and that the balance of hardships tips sharply in its favor.'" *Ocean Garden, Inc. v. Marktrade Company, Inc.,* 953 F.2d 500, 506 (9th Cir.1991) (quoting *First Brands Corp. v. Fred Meyer, Inc.,* 809 F.2d 1378, 1381 (9th Cir.1987)); *see also Sardi's Restaurant Corp. v. Sardie,* 755 F.2d 719, 723 (9th Cir.1985). Both tests require the moving party to prove a significant threat of irreparable injury.

### B. *Hollywood Has Demonstrated Probable Success on the Merits.*

■ To prove trademark infringement, a plaintiff must show ownership of a protectable trademark and a likelihood of consumer confusion. *Fuddruckers, Inc. v. Doc's B.R. Others, Inc.,* 826 F.2d 837, 841 (9th Cir.1987). A plaintiff makes a *prima facie* showing of ownership of a protectable trademark by producing a certificate of registration. 15 U.S.C. § 1057(b). Likelihood of confusion exists when "consumers viewing the mark would probably assume that the product or service it represents is associated with the source of a product or service identified by a similar mark." *Alpha Industries, Inc. v. Alpha Steel Tube & Shapes, Inc.,* 616 F.2d 440, 443 (9th Cir.1980).

■ Hollywood's ownership of the Marks is not disputed. Likewise, the issue of "likelihood of confusion" is not disputed because GHAC, as a licensee of the Marks, is using the identical Marks. Therefore, unless GHAC is authorized to use the Marks, it is violating Hollywood's rights as the registered owner of the Marks.

GHAC claims that it has a contractual right to use the Marks. GHAC claims that in the Fall of 1995, it began negotiating with Hollywood concerning termination of the Agreement. GHAC contends that in April

1996, the negotiations resulted in the parties agreeing that the Agreement would not terminate until MCA approved GHAC's request for a name change. GHAC asserts that the parties further modified the Agreement by revising the method for determining royalties and postponing GHAC's obligation to pay royalties until MCA approved the name change.

Hollywood admits that the parties began negotiating a termination of the Agreement in the Fall of 1995. However, Hollywood asserts that the negotiations failed. Because the negotiations failed, Hollywood sent its March 15, 1996 letter, and on March 30, 1996 the Agreement terminated. Hollywood claims that the negotiations that occurred after March 30 were merely an attempt to settle Hollywood's claims arising from GHAC's failure to meet its financial obligations, not an agreement to disregard the termination and modify the Agreement. On May 23, 1996, Hollywood again sent notice to GHAC demanding that GHAC cease and desist further use of the Marks.

Although GHAC argues that Hollywood agreed not to terminate the Agreement, the Court finds for the purposes of this Motion that GHAC's assertion is not supported by the record. For the purposes of this Motion, the Court finds that Hollywood terminated the Agreement on March 30 and thereafter was merely attempting to settle the claims resulting from GHAC's breach of the Agreement. Even assuming that the April negotiations *were* an attempt to agree not to terminate the Agreement (rather than a settlement attempt), the Court concludes for the purposes of this Motion that the parties never arrived at an enforceable, mutual agreement.

Based on the above, the Court finds for the purposes of this Motion that Hollywood owns the Marks, that there is a likelihood of confusion, and that GHAC is using the Marks without authorization. Accordingly, the Court finds that Hollywood is likely to succeed on the merits.

### C. *Hollywood Has Demonstrated A Significant Threat of Irreparable Injury.*

As a general rule, "once the plaintiff establishes a likelihood of confusion, it is ordinari-ly presumed that the plaintiff will suffer irreparable harm." *Vision Sports, Inc. v. Melville Corp.*, 888 F.2d 609, 612 n. 3 (9th Cir.1989); *see also Paisa, Inc. v. N & G Auto, Inc.*, 928 F.Supp. 1009, 1012 (C.D.Cal. 1996) (finding irreparable harm where defendant continued unauthorized use of franchisor's trademarks after franchisor terminated franchise for failure to pay royalty and advertising fees); *Professional Golfers Ass'n v. Bankers Life & Casualty Co.*, 514 F.2d 665, 670 (5th Cir.1975) (finding that use of trademarks after the termination of a licensing arrangement resulted in irreparable harm to the trademark owner).

■ In a licensor/licensee case, the reasons for issuing a preliminary injunction for trademark infringement are even more compelling than in the ordinary case. *Church of Scientology Int'l v. Elmira Mission of the Church of Scientology*, 794 F.2d 38, 42 (2d Cir.1986). The licensor has a strong need to control the use of its mark both to preserve the quality of the mark and to maintain the rights to the mark, for a licensor who fails to monitor its mark risks a later determination that the mark has been abandoned. *Id.* at 43. The licensor need not prove that the unauthorized licensee is damaging the licensor's reputation, but need only show that it has lost control over its reputation, which "is the very thing that constitutes irreparable harm in the licensing context." *Id.* at 44; *see also* Rudolf Callmann, *Law of Unfair Competition, Trademarks & Monopolies* § 22.37 (4th ed. 1995) ("[I]t can hardly be overemphasized that the most corrosive and irreparable harm attributable to trademark infringement is the inability of the victim to control the nature and quality of the defendant's goods. Even if the infringer's products are presently of high quality, the plaintiff can properly insist that his reputation should not be in the hands of another.").

■ Here, GHAC continues to use Hollywood's trademarks. Consumers will be unable to distinguish between GHAC's unauthorized use of the Marks and Hollywood's use, and thus Hollywood will not be able to control its reputation. GHAC's continued use of

Hollywood's Marks risks Hollywood's business relations, reputation, and goodwill. Accordingly, the Court finds that Hollywood has demonstrated a significant threat of irreparable harm.

### III. CONCLUSION

█ Hollywood has shown that it is likely to succeed on the merits of its trademark claims and that it will be irreparably injured if the Court fails to grant a preliminary injunction. Based on this showing, the Court finds that Hollywood has satisfied the requirements for the grant of a preliminary injunction. Therefore, Hollywood's Motion for Preliminary Injunction is granted.

IT IS ORDERED:

1. That the defendants, GHAC–CityWalk and Andrew Galef, their officers, agents, servants, employees, and attorneys, and those in active concert or participation with them, pending final disposition of this action, are preliminarily enjoined from:

a) using, displaying, or otherwise exploiting any of Hollywood's federally registered trademarks or service marks, which encompass the following:

| Trademark or Service Mark | Registration Number | Issue Date |
|---|---|---|
| Miscellaneous Design | 1,770,133 | May 11, 1993 |
| Hollywood Athletic Club | 1,775,630 | June 8, 1993 |
| Hollywood Athletic Club | 1,874,264 | January 17, 1995 |
| Hollywood Athletic Club (design) | 1,888,554 | April 11, 1995 |

in connection with the advertising, distribution, display, sale, or offering for sale of any products or services;

b) making any statement or representation or performing any act likely to lead members of the public to believe that defendants are authorized licensees of the Marks; and

c) making any statement or representation or performing any act likely to lead members of the public to believe that the business operated by defendants at 1100 Universal City Drive, Universal Studios CityWalk is in any manner, directly or indirectly, associated, affiliated or connected with, or licensed, sponsored, authorized or approved by Hollywood.

2. GHAC has until September 30, 1996 to exercise its right under the Agreement to promote, sell, and dispose at close-out any Licensed Products (as defined in paragraph one of the Agreement) on hand, on order, or in process at the time of termination.

3. GHAC shall have until September 19, 1996 to comply with this Order.

4. Pursuant to Rule 65(c) of the Federal Rules of Civil Procedure, Hollywood shall post a bond in the amount of $25,000; this Order is not effective until the bond has been posted.

**IT IS SO ORDERED.**