BYBEE, Circuit Judge,
dissenting:
I agree with much of the majority opinion. I concur that, in general, we should not decide duty of fair representation (“DFR”) challenges until “after a contract has been agreed upon.” Maj. Op. at 1181. In the typical ease, the contract will be the best evidence of fair representation or lack thereof. In my view, however, the contract is not the sine qua non of unfair representation, and the fact that a case could be more ripe — in the sense that the issues could be more concrete, more focused — is not evidence of the contrary proposition that the case is not ripe.
This is an unusual case and, in my view, an exception to the general rule that we evaluate the duty of fair representation based on the fairness of the actual representation as memorialized in the Collective Bargaining Agreement (“CBA”). Here, the absence of a CBA is itself powerful evidence of a DFR violation. As set forth quite fairly in the majority opinion and in a lengthy and careful opinion by the district court, the Air Line Pilots Association (“ALPA”) was decertified and a new union, the U.S. Airline Pilots Association (“USA-PA”), certified precisely to frustrate implementation of the Nicolau Agreement and to negotiate a CBA with U.S. Airways that favors the East Pilots. As the district court found, “USAPA’s sole objective in adopting and presenting its seniority proposal to the Airline was to benefit East Pilots at the expense of West Pilots, rather than to benefit the bargaining union as a whole.” Thus, “the terms of USAPA’s seniority proposal are substantially less favorable to West Pilots than the Nicolau Award” made through binding arbitration, an award that “USAPA concedes that it will never bargain for.” It has been nearly five years since the two airlines merged, and the pilots are further from, not closer to, a CBA that reflects the interests of *1185 both pilot groups. Although a CBA would supply tangible evidence of a violation of the DFR, in this case, there is sufficient evidence to consider the West Pilots’ complaint without the CBA. The issues are concrete and were well developed in district court proceedings that included a jury trial (for damages) and a bench trial (for equitable relief). I would hold the ease is ripe for decision and decide the appeal on the merits.
I
The “basic rationale” of the ripeness doctrine “is to prevent the courts, through premature adjudication, from entangling themselves in abstract disagreements.” Thomas v. Union Carbide Agric. Prods. Co., 473 U.S. 568, 580, 105 S.Ct. 3325, 87 L.Ed.2d 409 (1985). “Constitutional ripeness, in many cases, ‘coincides squarely with standing’s injury in fact prong’ and ‘can be characterized as standing on a timeline.’ ” Stormans, Inc. v. Selecky, 586 F.3d 1109, 1122 (9th Cir.2009) (quoting Thomas v. Anchorage Equal Rights Comm’n, 220 F.3d 1134, 1138 (9th Cir.2000)). Ripeness is a case-specific inquiry and does not lend itself to broad, bright-line rules based on the type of claim asserted. In Yahoo! Inc. v. La Ligue Contre Le Racisme Et L’Antisemitisme, 433 F.3d 1199, 1212 (9th Cir.2006) (en banc), we wrote that “[i]t is [ ] important to a ripeness analysis that we specify the precise legal question to be answered. Depending on the legal question, the case may be ripe or unripe. If we ask the wrong legal question, we risk getting the wrong answer to the ripeness question.”
A
Getting the legal question right is critical. Two related cases from the Supreme Court are particularly instructive here. In Ruckelshaus v. Monsanto Co., 467 U.S. 986, 104 S.Ct. 2862, 81 L.Ed.2d 815 (1984), the Court held that a plaintiffs challenges to the constitutionality of an arbitration and compensation scheme in the Federal Insecticide, Fungicide, and Rodenticide Act (“FIFRA”) would not become ripe until the “[Environmental Protection Agency] ha[d] considered data submitted by[the plaintiff] in evaluating another application and an arbitrator ha[d] made an award.... ” Id. at 1020, 104 S.Ct. 2862. The very next term, however, in Thomas v. Union Carbide Agricultural Products Co., the Court held that a similar constitutional challenge to FIFRA’s arbitration provisions was ripe even though none of the thirteen plaintiffs was actually challenging an arbitration award. 473 U.S. at 579-82, 105 S.Ct. 3325. Only one plaintiff — Stauffer Chemical Company — had engaged in arbitration, and it sought to enforce the award. None of the twelve other plaintiffs had actually engaged in an arbitration under FIFRA, but they alleged that they were “aggrieved by the threat of an unconstitutional arbitration procedure.” Id. at 579, 105 S.Ct. 3325. The Court did not dismiss any plaintiffs claims on ripeness grounds: “One does not have to await the consummation of threatened injury to obtain preventive relief. If the injury is certainly impending, that is enough. Nothing would be gained by postponing a decision, and the public interest would be well served by a prompt resolution of the constitutionality of FIFRA’s arbitration scheme.” Id. at 581-82, 105 S.Ct. 3325 (quotation marks and citations omitted) (emphasis added).
What our decision in Yahoo! and the Court’s decisions in Monsanto and Thomas make clear is that ripeness is a contextual and commonsense doctrine. If the unique circumstances of a particular claim render it fit for decision, the claim is ripe. I submit that this is a case in which “[n]othing would be gained by postponing a decision, and the [parties’] interests] would be well served by a prompt resolu *1186 tion of’ the West Pilots’ DFR claim. Id. at 582, 105 S.Ct. 3325.
B
“[A] union breaches the duty of fair representation when its conduct toward a member of the bargaining unit is arbitrary, discriminatory, or in bad faith.” Marquez v. Screen Actors Guild, Inc., 525 U.S. 33, 44, 119 S.Ct. 292, 142 L.Ed.2d 242 (1998). “The duty ... is the quid pro quo for the union’s right to exclusive representation; it protects employees in the minority from arbitrary discrimination by the majority union.” Laborers & Hod Carriers, Local No. 341 v. N.L.R.B., 564 F.2d 834, 839-40 (9th Cir.1977).
The majority describes three DFR cases from this circuit — Williams v. Pacific Maritime Association, 617 F.2d 1321 (9th Cir.1980), Bernard v. Air Line Pilots Association, 873 F.2d 213 (9th Cir.1989), and Hendricks v. Airline Pilots Association, 696 F.2d 673 (9th Cir.1983) — as “f[inding] DFR violations based on contract negotiation only after a contract has been agreed upon,” Maj. Op. at 1181. These cases are not only distinguishable, but completely inapposite. First, none of these cases even mentions ripeness. Together, Williams, Bernard, and Hendricks stand for the uncontroversial proposition that a DFR claim can be brought after a CBA or finalized seniority integration agreement has been completed. The issue here, however, is whether a DFR claim must be brought after a CBA or finalized seniority integration agreement, which none of our cases cited by the majority even purports to address.
Just as importantly, none of these cases addressed the “precise legal question” advanced by the West Pilots. In Williams, “[t]he heart of the employees’ claim of unfair representation [wa]s that the union breached its statutory duty to plaintiffs by agreeing to the adoption of [certain] standards for deregistration.” 617 F.2d at 1328 (emphasis added). In Bernard, the factual situation was basically a mirror image of this case: the merger of Alaska Air Group and Jet America became effective on October 1, 1987, and a seniority integration agreement was completed less than a week later, on October 6, 1987. 873 F.2d at 215. The plaintiffs in Bernard sued immediately thereafter and were quickly granted preliminary injunctive relief, which we upheld. Id. at 215, 219. Here, the West Pilots claim to be aggrieved by the failure to pursue the memorialization of an arbitration award in a finalized seniority integration agreement, while in Bernard the claim was the opposite: an agreement was memorialized almost immediately, without taking into account a preexisting merger policy. Finally, in Hendricks, plaintiffs argued that “the union[ ] breached its duty of fair representation because [a contract ] amendment was arbitrary and discriminatory.” 696 F.2d at 677 (emphasis added). Like the theory in Williams, the plaintiffs’ theory in Hendricks actually challenged a memorialized agreement and was therefore not the “precise” legal theory advanced here.
The majority also cites Air Line Pilots Association v. O’Neill, 499 U.S. 65, 111 S.Ct. 1127, 113 L.Ed.2d 51 (1991) (“ALP A”), for the proposition that “a claim can only be brought once negotiations are complete and a ‘final product’ has been reached.” Maj. Op. at 1182. With all due respect, this overstates what ALP A said. ALP A said nothing about the ripeness doctrine. What the Court said was that “[a]ny substantive examination of a union’s performance ... must be highly deferential, recognizing the wide latitude that negotiators need for the effective performance of their bargaining responsibilities. For that reason, the final product of the bargaining process may constitute evidence of a breach of duty....” 499 U.S. at *1187 78, 111 S.Ct. 1127 (internal citations omitted). The Court’s statement in ALFA only confirms what we already know: a CBA may be the best evidence of satisfaction of or violation of the DFR. But the Court’s equivocal “may constitute evidence” falls well short of confirming that “a claim can only be brought” once there is a CBA.
None of these cases are relevant with respect to the ripeness issue here. They stand for the noneontroversial proposition that a DFR claim can be brought after a CBA has been completed. By contrast, the issue here is whether a DFR claim can be brought prior to the completion of a CBA.
II
I agree with the majority that this case would be ripe if USAPA and U.S. Air had entered into a CBA. That is not the question that this case presents. We are asked whether our Article III jurisdiction extends to a DFR claim based on a union “constitutionally committed,” Maj. Op. at 1177, to voiding a binding arbitration award and adopting a “date of hire” seniority principle that plainly favors one side of a merger. When the question is posed in this way, I believe the ripeness of the West Pilots’ claims becomes clear.
We employ a two-part test to determine whether a claim is ripe for review, evaluating “(1) whether the issues are fit for judicial decision, and (2) whether the parties will suffer hardship if we decline to consider the issues.” San Diego County Gun Rights Comm. v. Reno, 98 F.3d 1121, 1132 (9th Cir.1996). The issues raised by the West Pilots’ DFR claim are straightforward, and the uncontested facts of this ease make clear that the issues involved are fit for decision on this record.
The West Pilots’ DFR theory does not depend on any contingent future events such as the memorialization of a finalized CBA or seniority integration agreement. The district court explained why the issues were fit for decision and the parties will suffer hardship if we decline to consider the issues:
The issues fit for decision are these: Whether USAPA adopted and presented its seniority proposal without any legitimate union objective, solely to benefit East Pilots at the expense of West Pilots, and if so whether the West Pilots are entitled to damages and an injunction therefor____ USAPA concedes it will never bargain for implementation of the Nicolau Award. It is constitutionally hostile to doing so. The Airline has accepted the Nicolau Award, expressing no opposition to it, and the union has failed to show any legitimate reason (or plausible future reason) for abandoning it. Liability flows from the process and aims of USAPA’s seniority position. The outcome of negotiations is irrelevant. Without an injunction, USAPA’s seniority position inevitably impairs the collective bargaining process.
For this same reason, denying judicial review would work a substantial hardship upon the parties, including the Airline .... In addition to depriving the West Pilots of legitimate representation, USAPA’s bargaining position leaves the Airline to decide between a lack of a single CBA and an unlawful single CBA.,
(Emphasis added).
I agree with the district court that, given the “precise legal question” raised by the West Pilots, this case is “fit for decision.” As the district court correctly observed, given the constitutional commitment of USAPA to date-of-hire principles — principles irreconcilably opposed to the compromise embodied in the Nicolau Award — “the outcome of negotiations is irrelevant.” As a result, the question presented in this case does not pivot on *1188 any “ ‘contingent future events that may or may not occur as anticipated, or indeed may not occur at all.’ ” Maj. Op. at 1179 (quoting Cardenas v. Anzai 311 F.3d 929, 934 (9th Cir.2002)). The West Pilots’ claimed “injury is certainly impending, [and] that is enough.” United States v. Streich, 560 F.3d 926, 931 (9th Cir.2009) (quotation marks omitted). Instead, as the district court found, “USA-PA has misled the majority about its power to improve their seniority prospects at the expense of the West Pilots. The will of the East Pilots springs from a mistaken understanding of the law and mismanaged expectations. If this is an impasse, it is one USAPA has goaded on.” (Emphasis added). The impasse is not evidence of the lack of ripeness of the West Pilots’ claims. It is Exhibit A in their case — it is itself evidence of USAPA’s intractability on behalf of the East Pilots. Again, as the district court found, “USAPA has made plain its intent never to bargain for the Nicolau Award,” and time appears to be on the side of the East Pilots.[1] Under these circumstances, the West Pilots need not “await the consummation of threatened injury to obtain preventive relief.” Id. (quotation marks omitted).
When the East Pilots campaigned to decertify ALPA and replace it with USA-PA, a new union constitutionally committed to pursuing date-of-hire principles, a DFR claim by the West Pilots would not have been ripe. As the Second Circuit explained in Ramey v. District 141 International Association of Machinists and Aerospace Workers, 378 F.3d 269 (2d Cir.2004), “a breach [of the duty of fair representation does not] occur[ ] when a union announces an intention, even if it does so unequivocally, to advocate against the interests of its members in the future.” Id. at 278. But when USAPA won the certification election and refused in practice to bargain for implementation of the Nicolau Award, a previously bargained-for award that the Airline had already accepted and continues to accept, this was not the announcement of an intention, but actual “act[ion] against the interests] of’ the West Pilots — the precise point at which, it seems to me (and to the Second Circuit), a DFR breach occurs. Id. (“the breach occurs when the union acts against the interests of its members”); see also Santos v. Dist. Council of New York City & Vicinity of United Brotherhood of Carpenters and Joiners of Am., AFL-CIO, 619 F.2d 963, 970-71 (2d Cir.1980) (holding that a union breached its duty of fair representation, and a DFR claim began to accrue, at the time “appellants were aware that the [union] was not proceeding in good faith to seek enforcement of [an arbitration] award”).
The majority argues that this case will not be ripe until “the airline responds to [USAPA’s seniority] proposal, the parties complete negotiations, and the membership ratifies the CBA,” Maj. Op. at 1180, but I respectfully disagree. Certainly this case might be “riper” were plaintiffs to wait for these future events, but when USAPA took the reins as the West Pilots’ union and refused to pursue the Nicolau Award, USAPA’s promise moved from abstract disagreement to adjudicable legal controversy. The future events cited by the majority are not likely to occur anytime soon, and plaintiffs will be harmed all the while. In the words of the Thomas Court, “[n]othing would be gained by post *1189 poning a decision....” 473 U.S. at 582, 105 S.Ct. 3325.
The ripeness inquiry is not concerned with whether a case is as ripe as it possibly could be. Twelve of the plaintiffs in Thomas had never even entered into FI-FRA arbitration. Their claims would have been riper had they undergone FIFRA arbitration prior to joining with Stauffer in a challenge to FIFRA’s arbitration procedures. Yet the Court noted these plaintiffs’ “continuing uncertainty and expense” and explained that “[o]ne does not have to await the consummation of threatened injury to obtain preventive relief.” Id. at 581, 105 S.Ct. 3325 (quotation marks omitted). No one disputes that the West Pilots are now suffering, and will continue to suffer, “continuing uncertainty and expense” due to the seniority impasse. They are entitled to have them claims heard.
I respectfully dissent.

. Although the West Pilots are not claiming that USAPA has "deliberately” delayed completing a CBA, Maj. Op. at 1180-81 n. 2, the majority notes that West Pilots have been furloughed and that they would not have been furloughed under the Nicolau Award, id. at 1180.