**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

JOHN MARVIN BOOTH; WESLEY
EUGENE BAKER; KENNETH LLOYD
COLLINS; TYRONE DELANO GILLIAM,
JR.; STEVEN HOWARD OKEN,
Plaintiffs-Appellees,

v.

No. 96-7597

STATE OF MARYLAND; PARRIS N.
GLENDENING, Governor of Maryland;
J. JOSEPH CURRAN, JR., Attorney
General of Maryland; EUGENE M.
NUTH, Warden,
Defendants-Appellants.

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
J. Frederick Motz, Chief District Judge.
(CA-96-2766-JFM)

Argued: March 3, 1997

Decided: April 21, 1997

Before WILKINSON, Chief Judge, HALL, Circuit Judge, and
BUTZNER, Senior Circuit Judge.

_____

Vacated and remanded by published opinion. Chief Judge Wilkinson
wrote the opinion, in which Judge Hall and Senior Judge Butzner
joined.

_____

**COUNSEL**

**ARGUED:** Gwynn X. Kinsey, Jr., Assistant Attorney General, Criminal Appeals Division, OFFICE OF THE ATTORNEY GENERAL, Baltimore, Maryland, for Appellants. Peter Edward Keith, GALLAGHER, EVELIUS & JONES, Baltimore, Maryland; Gary Wilmer Christopher, Assistant Federal Public Defender, Baltimore, Maryland, for Appellees. **ON BRIEF:** J. Joseph Curran, Jr., Attorney General of Maryland, Criminal Appeals Division, OFFICE OF THE ATTORNEY GENERAL, Baltimore, Maryland, for Appellants. Nevett Steele, Jr., Michael J. Gentile, Towson, Maryland, for Appellee Booth; William B. Purpura, Baltimore, Maryland, for Appellee Baker; Fred Warren Bennett, CATHOLIC UNIVERSITY LAW SCHOOL, Washington, D.C., for Appellee Oken; Charles G. Bernstein, Baltimore, Maryland; Neil Ian Jacobs, Rockville, Maryland, for Appellee Collins; Jerome H. Nickerson, Bel Air, Maryland, for Appellee Gilliam.

_____

**OPINION**

WILKINSON, Chief Judge:

Five death row prisoners sued the State of Maryland, its Governor, Attorney General, and a state prison warden under 42 U.S.C. § 1983. The prisoners sought a declaratory judgment that Maryland was not entitled to the benefits of the new chapter 154 of the federal habeas corpus statute, 28 U.S.C. §§ 2261-2266, and an injunction prohibiting Maryland from raising chapter 154 as a defense in the inmates' prospective federal habeas corpus cases. After denying the defendants Eleventh Amendment immunity, the district court granted plaintiffs the requested relief. Booth v. Maryland, 940 F. Supp. 849 (D. Md. 1996). Finding that relief in this civil action would abridge the basic principles of the Eleventh Amendment, we vacate the judgment of the district court and remand with instructions to dismiss.

I.

The Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA) brought a number of changes to the federal habeas corpus

2

statute. The new chapter 154, entitled "Special Habeas Corpus Proce-
dures in Capital Cases" creates incentives for state governments in
capital cases. States that meet certain requirements for the appoint-
ment and compensation of counsel in state post-conviction proceed-
ings are known as "opt-in" states and are entitled to prompter and
more deferential review in federal habeas proceedings. 28 U.S.C.
§§ 2261-2266. Specifically, prisoners filing federal habeas suits in
"opt-in" states must file their petitions within 180 days after the final
state court affirmance of the conviction and sentence on direct review.
28 U.S.C. § 2263(a). In an opt-in state, the federal habeas court must,
for example, consider the case before all noncapital matters,
§ 2266(a), and must enter a final judgment within 180 days from the
filing date, § 2266(b)(1)(A). As a general matter, the court may not
consider claims that were not raised and decided on the merits in state
courts, § 2264, and it may not allow amendments to the habeas peti-
tion after an answer to the petition has been filed,§ 2266(b)(3)(B).

All five plaintiffs in this case have previously filed state petitions
for post-conviction review that have been reviewed by the Maryland
Court of Appeals. One of the five inmates had filed a federal habeas
petition at the time this action was brought, and the other four planned
to do so after their state remedies were exhausted. The prisoners
brought this action seeking a declaratory judgment that the State of
Maryland had failed to comply with the requirements of chapter 154
and an injunction forbidding Maryland from invoking chapter 154
until the state did comply.

The district court agreed with the inmates. After finding that Mary-
land and its officials were not entitled to Eleventh Amendment immu-
nity, the court ruled that Maryland had failed to comply with three of
the requirements of chapter 154. Specifically, the court held that
Maryland did not have codified "competency standards" for appoint-
ment of post-conviction counsel, 28 U.S.C. § 2261(b), that the com-
pensation rates for these attorneys did not satisfy the statute, id., and
that Maryland's policy of disallowing payment for computerized legal
research and photocopying expenses violated chapter 154's require-
ment of reimbursement of "reasonable litigation expenses," id. The
court therefore declared that Maryland was "not presently entitled to
invoke the benefits of Chapter 154" and enjoined the state from

attempting to invoke the new standards in any future federal habeas actions brought by the five inmates. Booth, 940 F. Supp. at 855.

Maryland now appeals and argues that the Eleventh Amendment bars this lawsuit.

II.

We begin with a brief reiteration of the basic history of the Eleventh Amendment. At the time the Constitution was drafted,

> [t]he right of the Federal Judiciary to summon a State as defendant and to adjudicate its rights and liabilities had been the subject of deep apprehension and active debate .. . but the existence of any such right had been disclaimed by many of the most eminent advocates of the new Federal Government, and it was largely owing to their successful dissipation of the fear of the existence of such Federal power that the Constitution was finally adopted. 1 C. Warren, The Supreme Court in United States History 91 (rev. ed. 1937)(quoted with approval in Edelman v. Jordan , 415 U.S. 651, 660 (1974)).

In the first few years of its existence, the Supreme Court nonetheless heard numerous suits against states. In the most famous of these, Chisholm v. Georgia, 2 Dall. 419 (1793), the Court held that a state was susceptible to suit by a citizen of another state or of a foreign country. The ruling caused "such a shock of surprise that the Eleventh Amendment was at once proposed and adopted." Principality of Monaco v. Mississippi, 292 U.S. 313, 325 (1934). The amendment retains a continuing vitality. The Supreme Court noted that "[f]or over a century we have reaffirmed that federal jurisdiction over suits against unconsenting States `was not contemplated by the Constitution when establishing the judicial power of the United States.'" Seminole Tribe v. Florida, 116 S.Ct. 1114, 1122 (1996) (quoting Hans v. Louisiana, 134 U.S. 1, 15 (1890)).

Unchanged since its passage in 1798, the Eleventh Amendment limits the jurisdiction of federal courts over state defendants:

4

The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State. U.S. Const. amend. XI.

Although the Amendment is silent as to suits brought against a state by it own citizens, the Supreme Court "has consistently held that an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State." Edelman, 415 U.S. at 662-63 (citing Hans, 134 U.S. 1 and numerous other cases).[1] Eleventh Amendment immunity also extends to state officials when they are merely the nominal defendants and "the state is the real, substantial party in interest." Ford Motor Co. v. Department of Treasury, 323 U.S. 459, 464 (1945); see also McConnell v. Adams, 829 F.2d 1319, 1329 (4th Cir. 1987) (judgment against state officials acting in official capacity contrary to Eleventh Amendment).

Under settled precedent, then, the Eleventh Amendment protects the sovereign rights of states from abridgement by the federal judiciary. Thus, the State of Maryland and the named officials are not subject to this suit unless the plaintiffs can demonstrate that this case falls within one of the exceptions to Eleventh Amendment immunity.

III.

The defendants assert the Eleventh Amendment as an absolute bar to this action. The plaintiff inmates, on the other hand, argue that the defendants' Eleventh Amendment defense fails on three grounds: (1) the case concerns a continuing violation of federal law and therefore

_____

[1] Some Justices distinguish between Eleventh Amendment immunity (applicable when a state is sued by citizens of a foreign state) and sovereign immunity (applicable when a state is sued by its own citizens). See, e.g., Edelman, 415 U.S. at 687 (Brennan, J. dissenting); Seminole Tribe, 116 S.Ct. at 1133-1145 (Stevens, J. dissenting). However, since Hans a majority of the Court has come to regard sovereign immunity as implicit in the Eleventh Amendment. See, e.g., Florida Dep't of State v. Treasure Salvors, Inc., 458 U.S. 670, 683 n.17 (1982); Edelman, 415 U.S. at 662-63.

falls under the exception to Eleventh Amendment immunity invoked in Ex Parte Young, 209 U.S. 123 (1908), (2) the action involves habeas corpus, a subject which is excepted from Eleventh Amendment immunity, and (3) Maryland has implicitly waived the immunity by affirmatively threatening to invoke chapter 154 in future habeas cases. We address each of these grounds in turn.

A.

The prisoners first argue that the doctrine of Ex Parte Young defeats the state defendants' claim of immunity. In Ex Parte Young, the Supreme Court ruled that the Eleventh Amendment does not bar suits seeking to enjoin state officials from committing continuing violations of federal law. 209 U.S. at 159-160. The inmates contend that because their action is for injunctive and declaratory relief rather than monetary damages, it falls squarely within the Ex Parte Young exception to Eleventh Amendment immunity.

Ex Parte Young represents a limited exception to Eleventh Amendment immunity, applicable only when plaintiffs allege an ongoing violation of federal law. The Supreme Court has not shown a propensity to relax this requirement; to the contrary, its cases analyzing the Ex Parte Young doctrine consistently require a"continuing violation of federal law." See, e.g., Will v. Michigan Dep't of State Police, 491 U.S. 58, 89 (1989); Papasan v. Allain, 478 U.S. 265, 277-278 (1986); Green v. Mansour, 474 U.S. 64, 68 (1985). In Green v. Mansour, for example, the Court ruled that any possible violation of federal law ended when the relevant federal statute was changed, so Ex Parte Young could not apply and the Eleventh Amendment barred the action. 474 U.S. 64. As recently as last year, the Court reaffirmed the "continuing violation of federal law" requirement of the Ex Parte Young decision. Seminole Tribe, 116 S.Ct. at 1132.

The reasons for limiting the Ex Parte Young exception to Eleventh Amendment immunity are not difficult to discern. Requiring an ongoing violation of federal law sets a minimum threshold for abrogating a state's constitutional immunity. To have a state sued in federal court without even a contention of an ongoing violation of federal law would only multiply "the indignity of subjecting a State to the coercive process of judicial tribunals at the instance of private parties."

6

Puerto Rico Aqueduct and Sewer Authority v. Metcalf & Eddy, Inc., 506 U.S. 139, 146 (1993) (internal quotation marks omitted). Because the Eleventh Amendment embodies the "integrity retained by each State in our federal system," its command cannot be disregarded. Hess v. Port Authority Trans-Hudson Co., 513 U.S. 30, 39 (1994). In this case, the sovereignty concerns protected by the Eleventh Amendment are implicated by both forms of equitable relief awarded. A declaration of the rights and legal relations of the parties would breach the Eleventh Amendment if there had been no colorable allegation that the state has violated federal law. And, enjoining a state from asserting a particular defense in some future federal action would be precisely the sort of inroad on state sovereignty that the Eleventh Amendment forbids.

The plaintiffs' Ex Parte Young argument in this case founders on a basic point -- they have shown no continuing violation of federal law. In fact, plaintiffs can demonstrate no violation of federal law at all -- past, present, or potential. They allege only that Maryland has announced an intention to invoke a federal statutory defense in future habeas corpus actions. If, for example, a prisoner files a habeas corpus petition after chapter 154's six-month deadline has expired, Maryland is free to move for dismissal based on lack of timeliness. See 28 U.S.C. § 2263(a). In response, the prisoner is free to argue that a one-year rather than a six-month deadline applies because Maryland is not in compliance with the requirements of chapter 154. See 28 U.S.C. § 2244(d)(1) (one-year filing deadline for all federal habeas corpus petitions). Whether or not Maryland successfully invokes the defense, the state cannot have violated federal law merely by raising it. To hold otherwise would ignore the limits of the Ex Parte Young exception. Seminole Tribe, 116 S.Ct. at 1132.

Nor is the requirement of a continuing violation of federal law satisfied if a state is found to be in noncompliance with chapter 154. The chapter is a voluntary opt-in provision. Even if a state decides, for its own reasons, not to opt in, the state has violated no federal rights. Indeed, a state's decision not to take advantage of optional incentives afforded by a federal statute does no damage to values embodied in the Supremacy Clause. And it was, of course, to protect the supremacy of federal law that the exception to Eleventh Amendment immu-

7

nity in Ex Parte Young was created. See Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 102 (1984).

The inmates attempt to place this case within the Ex Parte Young rubric by claiming that the announcement of the state's intent to invoke chapter 154 is itself unlawful. The possibility of a successful chapter 154 defense requires prisoners to file their federal habeas petitions within the six-month deadline imposed by the new law, rather than allowing them a full year of preparation. The inmates argue that their rights are thereby violated, and that Maryland has violated federal law merely by threatening to invoke the benefits of chapter 154 without first satisfying its requirements.

We disagree. A party bringing suit must always take the possibility of a successful affirmative defense into account in its litigation strategy. In many different actions, litigants must file a case and plot a strategy without clear foreknowledge of how the case will unfold. To file earlier rather than later is a decision many a prudent litigant will make. A plaintiff bringing suit under the Federal Tort Claims Act ("FTCA"), for example, was for many years uncertain as to whether its two-year statute of limitations, 28 U.S.C. § 2401(b), began to run at the time he discovered his injury, at the time he discovered the cause of his injury, at the time he should have known of both the injury and cause, or at the time he became aware that the injury was negligently inflicted. See United States v. Kubrick, 444 U.S. 111 (1979) (ruling that statute of limitations under FTCA begins running when plaintiff knows both the existence and cause of his injury). The litigant nonetheless was required to comply with the two-year deadline or face a potential statute of limitations defense. Plaintiffs in such actions, just like plaintiffs filing a federal habeas corpus petition, are required to make litigation decisions in light of possible defenses. That does not, however, make a state's announcement of its intent to raise a chapter 154 limitations defense improper or unlawful.

Plaintiffs can, of course, avail themselves of an opportunity to decide the applicability of chapter 154 in a proceeding which is less damaging to state sovereignty. They need only raise their contention during federal habeas corpus proceedings. In order to ascertain what procedures will govern federal review of a capital case, a federal court may be required to determine whether the state has satisfied the

8

requirements of chapter 154. This is true even where the prisoner meets the earlier filing deadline because chapter 154 implements several other changes. Where it applies, for example, chapter 154 requires a federal district court to: (1) review only claims that were raised before a state court, 28 U.S.C. § 2264, (2) consider the case before all noncapital matters, § 2266(a), and (3) enter a final judgment within six months from the filing date, § 2266(b). Hence, individual habeas actions are a natural and adequate forum in which to challenge chapter 154's applicability. These rulings, like any other, would be subject to appeal.

Indeed, many plaintiffs have sought and obtained adjudication of a state's eligibility to invoke chapter 154 in precisely this manner. In Hamblin v. Anderson, 947 F. Supp. 1179 (N.D. Ohio 1996), to take but one example, the prisoner sought a writ of habeas corpus challenging his conviction and death sentence. The defendant warden filed a motion for a finding that chapter 154 applied to the petitioner's case. The district court found that Ohio did not satisfy the requirements of chapter 154, so its provisions would not apply to Hamblin's petition. Many other federal courts have similarly decided the applicability of chapter 154 in the context of a habeas corpus action. See, e.g., Bennett v. Angelone, 92 F.3d 1336 (4th Cir. 1996); Mata v. Johnson, 99 F.3d 1261 (5th Cir. 1996), rev'd in part on other grounds, 105 F.3d 209 (1997); Breard v. Netherland, 949 F. Supp. 1255 (E.D. Va. 1996); Wright v. Angelone, 944 F. Supp. 460 (E.D. Va. 1996); Satcher v. Netherland, 944 F. Supp. 1222 (E.D. Va. 1996); Zuern v. Tate, 938 F. Supp. 468 (S.D. Ohio 1996).

In sum, this action fails to satisfy the requirements of Ex Parte Young. Neither the invocation of a chapter 154 defense, nor the announced intention to assert such a defense, nor the failure to comply with chapter 154 constitutes a continuing violation of federal law. Under these circumstances, we find no authorization in Ex Parte Young for abrogating Maryland's Eleventh Amendment immunity. Since injunctive relief is not available in this case under Ex Parte Young, declaratory relief is not available either. Green, 474 U.S. at 74.

B.

Plaintiffs next claim that this case falls within the habeas corpus exception to Eleventh Amendment immunity. It is true that the Elev-

9

enth Amendment offers no bar to a habeas corpus petition against a state which is holding a prisoner in violation of the Constitution or laws of the United States. From the earliest times, Eleventh Amendment immunity has not prevented actions seeking a writ of habeas corpus, whether the defendant be the sovereign itself, or some agent of the sovereign. Fitzpatrick v. Bitzer, 427 U.S. 445, 455-56 (1976); Frank v. Mangum, 237 U.S. 309, 331 (1915); Ex Parte Royall, 117 U.S. 241, 249 (1886); see also United States v. Hendricks, 213 F.2d 922, 926 (3d Cir. 1954). More recently, the Court noted in Seminole Tribe that in enacting the habeas corpus statute, 28 U.S.C. § 2254, Congress "implicitly authorized suit under Ex Parte Young." 116 S.Ct. at 1133 n.17. Indeed, a petition for a writ of habeas corpus falls squarely under Ex Parte Young -- it is an action brought against state officials to prevent the continued detention of a prisoner pursuant to an unlawful conviction or sentence.

This action, however, involves no petition for habeas corpus. The prisoners do not challenge their convictions or sentences. They do not complain in this action that the State of Maryland or its officials are violating their rights by holding them in custody in violation of the Constitution or laws of the United States. They do not request any relief within the scope of the habeas corpus statute. By their own admission the plaintiffs brought this suit with the specific objective of obtaining a ruling apart from any actual federal habeas petitions. While the controversy "involves" the federal habeas corpus statute, it is not an action for a writ of habeas corpus. The prisoners cannot, therefore, invoke the habeas corpus exception to Eleventh Amendment immunity.

C.

Finally, Maryland's announced intention to invoke chapter 154 does not constitute a waiver of Eleventh Amendment immunity on the part of the state. This waiver theory fails under Atascadero State Hospital v. Scanlon, 473 U.S. 234 (1985). There the Court explained that "[t]he test for determining whether a State has waived its immunity from federal-court jurisdiction is a stringent one." Id. at 241. A waiver can be effected in one of two ways. First, a state may directly and affirmatively waive its Eleventh Amendment immunity in a state statute or constitutional provision, as long as the provision explicitly

10

"specif[ies] the State's intention to subject itself to suit in <u>federal court</u>." <u>Id.</u> (emphasis in original). Second, a state may constructively waive its immunity by voluntarily participating in federal programs when Congress expresses "a clear intent to condition participation in the programs . . . on a State's consent to waive its constitutional immunity." <u>Id.</u> at 247.

Neither theory of waiver applies to this case. The prisoners cite no Maryland statute or constitutional provision waiving Maryland's immunity. Likewise, the inmates point to no element of the old federal habeas statute or the AEDPA amendments which would condition state "participation" on the state's consent to be subject to a non-habeas civil suit. In fact, the AEDPA is replete with provisions which evidence an intent to increase federal judicial deference toward the states. <u>See</u>, <u>e.g.</u>, 28 U.S.C. § 2254(d)(1) (no relief for claims decided in state court unless decision was contrary to clearly established federal law); 28 U.S.C. § 2254(e)(1) (factual determination of state court presumed correct unless rebutted by clear and convincing evidence); 28 U.S.C. § 2264(a) (in capital cases in complying states, federal court can consider only claims that were raised and decided on merits in state court). To find that the AEDPA implicitly subjected states to increased exposure to lawsuits would be to stand the statute on its head, as well as to flout the criteria set forth in <u>Atascadero</u>. In short, no express or implied waiver occurred in this case. **2**

_____

**2** Plaintiffs contend that the Attorney General of Maryland somehow expressly waived immunity in this case. This court has held, however, that the Attorney General of Maryland lacks the authority to waive Eleventh Amendment immunity on behalf of the state and its officials. <u>Linkenhoker v. Weinberger</u>, 529 F.2d 51, 53-54 (4th Cir. 1975). Moreover, even if he did have the authority to waive immunity, nothing in his conduct or that of any other state official would support a waiver. To the contrary, the state and its officials have argued in the initial pleading in this case, and in every subsequent pleading, that the action is barred by the Eleventh Amendment. Finally, because the Eleventh Amendment is a jurisdictional bar, it can be considered even if not raised in district court. <u>Edelman</u>, 415 U.S. at 678.

11

IV.

Plaintiffs have repeatedly urged us to rule on their contentions in this consolidated action rather than in individual habeas petitions because of considerations of judicial economy and convenience. They maintain that if "five judges of the lower court would each have power and jurisdiction during the five inmates' individual habeas proceedings to consider whether Maryland satisfies the requirements of Chapter 154, then as a matter of judicial economy and power this question can surely be addressed by a single judge in a single proceeding." Appellees' Brief at 15. They further contend that this approach is "appropriate, cost-effective and consistent with the intent of Congress to control the expense of litigation." Id. at 22.

The Constitution, however, is not simply a document of judicial economy and convenience. It might, of course, be more convenient for government to ignore the requirements of the warrant clause, or the right against self-incrimination, or the dictates of due process, yet it goes without saying that our founding charter does not permit such short-cuts. The same document that guarantees rights to citizens imbues the states with attributes of sovereignty. Here Maryland has interposed that sovereignty against the efficiencies embodied in consolidated proceedings and in the Declaratory Judgment Act. This it has every right to do. "Policy, no matter how compelling, is insufficient, standing alone, to waive [sovereign] immunity." Library of Congress v. Shaw, 478 U.S. 310, 321 (1986). Because the Eleventh Amendment protects state sovereignty against this form of suit in federal court, we cannot now provide the answers to the questions raised herein.

V.

We thus vacate the judgment of the district court and remand with instructions to dismiss. In view of our disposition, we have no occasion to visit the merits of the district court's rulings.

VACATED AND REMANDED

12